156 N.J. Super. 578 (1978)
384 A.2d 209
PORT AUTHORITY TRANS-HUDSON CORPORATION, PLAINTIFF-RESPONDENT,
v.
BAUM BUS COMPANY, INC., ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1977.
Decided January 23, 1978.
*580 Before Judges ALLCORN, MORGAN and HORN.
Mr. Michael D. O'Shea argued the cause for appellants (Messrs. Waters, McPherson, Hudzin & McNeill, attorneys).
Mr. Hugh H. Welsh argued the cause for respondent (Mr. Francis A. Mulhern, attorney).
PER CURIAM.
The single issue raised in this appeal by defendants, consisting of 19 individual corporate franchised bus operators and their association, is whether defendants were constitutionally entitled to a hearing prior to the promulgation by plaintiff Port Authority Trans-Hudson Corporation (PATH) of tariffs for the use by defendants and all others similarly situated of PATH's transportation facility in Jersey City, which is known as the Journal Square Transportation Center.
Defendants raised said issue, among others, in resisting an action brought by PATH to compel the individual defendants to pay scheduled tolls which PATH's board of directors fixed by resolution on February 13, 1975.
Judge Tarleton, in a comprehensive opinion, 156 N.J. Super. 585 (Law Div. 1977), decided all of the issues raised in said litigation, including the point before us. Adversely to defendants' contentions, he found that the tolls were reasonable and that defendants were not entitled to a hearing before the amounts of the tolls were fixed. We agree with that determination substantially for the reasons stated in said opinion. We add the following comments.
Defendants rely on a provision of the Urban Mass Transportation Acts of 1964 and 1970, 49 U.S.C.A. 1601 et seq. In particular, attention is directed to 49 U.S.C.A. 1602(d), which was enacted as part of the act of 1970, providing:

* * * * * * * *
(d) Any application for a grant or loan under this chapter to finance the acquisition, construction, reconstruction or improvement *581 of facilities or equipment which will substantially effect a community or its mass transportation service shall include a certification that the applicant 
(1) has afforded an adequate opportunity for public hearings pursuant to adequate prior notice, and has held such hearings unless no one with a significant economic, social or environmental interest in the matter requests a hearing.

* * * * * * * *
It is contended that at such a hearing the standard for reviewing the tolls imposed by PATH is whether they are "just and reasonable," as dictated by the Bridge Acts of 1906 and 1946. 33 U.S.C.A. 494; 33 U.S.C.A. 526. It is suggested that this standard of review extends to tolls charged for use of the Journal Square Transportation Center, since that facility is part of an interstate transit system.
The above-quoted provision of the Urban Mass Transportation Act (UMTA), 49 U.S.C.A. § 1602(d), was added in 1970, subsequent to UMTA's first grant to PATH in April 1968. Pub. L. 91-453, § 2(2). Prior to 1970 the act did not contain a public-hearing requirement. The second UMTA grant was made in May 1971, subsequent to the passage of the public-hearing requirement. However, this grant was made for the purpose of meeting cost overruns. Grants for this purpose are not subject to the public-hearing requirement where the scope of the project is not significantly changed. Consequently, defendants cannot successfully assert a right to a hearing based on this act. The fact that provisions of the Bridge Acts of 1906 and 1946 require that tolls be "just and reasonable" may govern a hearing if held, but are of no avail to defendants in seeking to compel a hearing. Nothing in the Bridge Acts mandates a hearing on the question of tolls.[1]
*582 Defendants' additional argument that they have been denied their rights under the Fourteenth Amendment is totally unsupported by citations to authority. Moreover, the argument is without merit.
Preliminarily, PATH is a public agency. Terminal Enterprises, Inc. v. City of Jersey City, 54 N.J. 568, 576 (1969). PATH is charged with acting reasonably and not arbitrarily, as are all public agencies, and the reasonableness of its conduct is subject to judicial scrutiny. Terminal Enterprises, supra, at 577. The powers vested in public agencies may be likened to those of municipalities. Terminal Enterprises, supra, at 576-577. The following statement of the powers of local governing bodies is particularly apt in the present case:
The province of the local governing body is the fulfillment of the categorically declared legislative policy. Such regulation is purely a legislative function; and even when the power is exercised through a designated subordinate agency the hearing on notice essential to judicial proceedings is not indispensable. If the regulation undertaken be arbitrary or unreasonable, then ample relief may be had in the judicial forum; and thereby the demand of the due process clauses is satisfied. State Board of Milk Control v. Newark Milk Co., cited supra [118 N.J. Eq. 504 (179 A. 116) (E. & A. 1935)]. [Jamouneau v. Harner, 16 N.J. 500, 522 [109 A.2d 640] (1954), cert. den. 349 U.S. 904 [75 S.Ct. 580, 99 L.Ed. 1241] (1955)]
Defendants do not contend that the toll of $.50 is arbitrary or unreasonable, but that they cannot test the reasonableness of the toll without a hearing. However, the facts suggest that the toll is eminently reasonable, considering that PATH exacts a much higher toll ($1.20 from its nearby terminals in midtown Manhattan and at the *583 George Washington Bridge). In addition, the tolls at all three facilities are less than compensatory. It was estimated that "at a fee of $.50 per round trip, PATH is absorbing over 75% of the cost of providing new mass transportation services for the Journal Square bus commuter." The study setting forth the facts and figures which provided the basis for the decision to impose the $.50 toll was and is available to defendants. It provides them with a meaningful basis for reviewing the reasonableness of the toll. Absent at least a suggestion that the $.50 toll is unreasonable or arbitrary, their demand for a hearing has no support in law.
There are sound reasons for insulating PATH's judgment in this matter from the requirement of being tested at a hearing. The analysis applied in similar situations calls for deciding whether the agency is performing a governmental or propietary function. Although there can be found statements that the governmental-proprietary dichotomy is useful only as a matter of public policy, to limit the reach of municipal tort liability, Washington Tp. v. Ridgewood, 26 N.J. 578, 584 (1958), nevertheless the distinction continues to be employed in other areas of the law. Most recently, in Atlantic City Electric Co. v. Bardin, 145 N.J. Super. 438, 444-445 (App. Div. 1976), this court held that the State Natural Resource Council exercised a proprietary function in establishing the fee to be paid by licensees who wish to lay cable across tidelands. Appellants in that case attacked the agency's action on the basis that it was not guided in setting the fee by any legislative standards or guidelines. Although there was no suggestion that appellants in that case should have had a hearing to test the reasonableness of the fee, as in the present case, the essential thrust in each case is the same: unguided or untested agency discretion is unconstitutional. The court stated that such proprietary activity, in contrast to regulatory activity, need not be the subject of detailed statutory standards. With respect to price determinations, which can be likened to the determination of a proper toll, the court said: "In our view, *584 price determinations, by their very nature, are not readily amenable to definite legislative standards because the legislative action is distant from day-to-day administrative decisions." Later, the court referred to such price determinations as an exercise of business judgment. Atlantic City Electric Co. v. Bardin, supra at 477.
This court in State v. Daquino, 56 N.J. Super. 230, 237-240 (App. Div. 1959), considered the governmental proprietary distinction to be applicable to the question of whether the Port Authority could properly regulate peddlers at Newark Airport. As in Atlantic City Electric Co. v. Bardin, supra, appellant unsuccessfully challenged Port Authority's power to do so on the basis that the Port Authority was not guided by any norm or standard in granting or denying authorization for sales at the airport. Judge Conford's following characterization of an air terminal makes clear the Port Authority's proprietary role. His description could just as well be applied to the Journal Square Transportation Center.
* * * Yet the nature of an air terminal as an integrated commercial enterprise is so functionally akin to that of a private business operation as to render it reasonable, in the interests of its efficient management, that the agency charged with its maintenance and operation be vested with many of the incidents of administrative control and discretion which would be necessary and desirable were the enterprise under private management * * *. The general view applicable to airports operated by public agencies is that the agency must be held to have "all incidental powers * * * necessary to perform such functions in the same efficient manner as would a private person * * *." [56 N.J. Super. at 238; citations deleted]
We conclude that PATH was exercising a proprietary function in setting the toll for use of the terminal. As such, its decision was not subject to the requirement that it be publicly tested. In sum, there is neither statutory nor constitutional authority supporting defendants' demand for a hearing.
For the foregoing reasons the judgment is affirmed.
NOTES
[1] 33 U.S.C.A. § 504 provides, in pertinent part:

The Secretary of Transportation is authorized, either upon complaint or upon his own initiative, to conduct an inquiry at any time for the purpose of determining whether any toll charged for passage or transit * * * is in violation of section 503 of this title, and if he finds, after full opportunity for hearing, that such toll is in violation of such provisions he is authorized * * * [to determine] * * * what will be the just and reasonable toll * * *.
Although such a hearing is "authorized," nothing in this section mandates that it be held.